IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| APOGEE WAUSAU GROUP, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PMC PROPERTY GROUP, INC. | : | NO. 22-3690 |

MEMORANDUM

Bartle, J.                                                    May 8, 2024

    Plaintiff Apogee Wausau Group, Inc. d/b/a Wausau Window and Wall Systems ("Wausau") brings this diversity action for breach of contract and for quantum meruit/unjust enrichment against defendant PMC Property Group, Inc. ("PMC").  Wausau alleges that PMC failed to pay $2,296,200.01 due for curtain wall panels and other materials for a construction project.[1]  PMC has filed a counterclaim against Wausau for breach of contract for $1,225,000 in damages.

    Before the court is the motion of Wausau for summary judgment as to its claims against PMC and as to PMC's counterclaim (Doc. # 38).  PMC also moves for partial summary judgment as to Wausau's claims regarding three of the four of its invoices at issue (Doc. # 39).

---

1.    Wausau is incorporated under the laws of Wisconsin and has its principal place of business in that state.  PMC is a Pennsylvania corporation with its principal place of business in the Commonwealth.  The amount in controversy exceeds $75,000 exclusive of interests and costs.  See 28 U.S.C. § 1332(a).

I

The Court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  The court must draw all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient evidence in the record for a reasonable factfinder to find for the nonmovant.  See Anderson, 477 U.S. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.  In addition, Rule 56(e)(2) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."

-2-

Even if it does not grant summary judgment, the court under Rule 56(g) may enter an order stating that a material fact is undisputed and that it is established for purposes of the case.

## II

The following facts are cited as undisputed.  Wausau contracted with PMC, a real estate developer, to sell and deliver 3,865 curtain wall panels and other related materials for $15,088,806 in connection with the construction of the Riverwalk, a two-tower mixed-use community bordering the Schuylkill in Philadelphia.  Wausau has submitted and PMC has not paid the following invoices:

(a)  An August 28, 2021 invoice for $16,236.72 related to Tower I (No. 104418);

(b)  A January 18, 2022 invoice for engineering labor, materials and manufacturing labor for $1,556,151.50 related to Tower II (No. 105746); and

(c)  An April 21, 2022 invoice for engineering labor, materials and manufacturing labor for $819,649.91 related to Tower II (No. 106589).

On December 25, 2021 Wausau refunded PMC $95,838.12 due to overbilling (Invoice No. 105602).  Thus, the amount Wausau has placed in issue in its complaint is $2,296,200.01.

The contract which forms the basis of Wausau's lawsuit is a Quote Confirmation (Wausau Quote No. 278652-Rev04) dated April 21, 2020. Luke Schessler signed on behalf of Wausau Window & Wall Systems (the trade name of Wausau) and Andrew Feldman, as Senior Project Manager, signed on behalf of PMC.[2] The Quote Confirmation specifies that Wausau would furnish PMC with curtain wall panels, various hardware such as door hinges and handles, and design labor over the course of the Riverwalk construction project. The contract outlines the approximate amounts of each product and various specifications. The Quote Confirmation states:

> Wausau will bill monthly for work completed, including, but not limited to, engineering, new extrusion dies, and materials received at Wausau. The monthly invoice amount will be projected through the billing date or end of the calendar month, in accordance with an agreed-upon Schedule of Values between Wausau and customer.

The Quote Confirmation requires that "substantially complete shipment(s) must be accepted from Wausau, or arrangements for storage finalized with Wausau, within 24 months after the date of order entry." It does not identify interim shipment dates but notes that "all delivery schedules will be deemed good faith estimates only, and not binding." The Quote Confirmation limits damages against Wausau. It provides that "Wausau will not be

---

2.    Schessler signed the document on April 15, 2020 and Feldman signed on April 23, 2020.

liable under any circumstances for indirect, incidental, consequential, special or punitive damages of any kind."[3]

PMC cites an additional document dated April 23, 2020. It was signed by Amadou Sar, Vice President of Sales and Marketing at Wausau, and by Feldman.[4]  It is entitled "First Amendment and Supplementary Conditions to Quote Confirmation #278652-Rev03 Wausau Window & Wall System Riverwalk – Building D" ("First Amendment").  It states that it "supplement[s] and modif[ies]" the terms of the Quote Confirmation #278652-Rev03, dated March 17, 2020.  This is not the April 21, 2020 Quote Confirmation signed by the parties which references Quote No. 278652-Rev04.

In contrast to the April 21, 2020 Quote Confirmation, Feldman did not sign the First Amendment on behalf of PMC in its own right, that is as a party to the contract.  Above Feldman's signature is written:

---

3.   The total price of $15,088,806 is based on "payment within thirty (30) days of invoice date . . . . Past due payments will accrue service charges on the total amount due and owing at the lesser of 12% per annum or the maximum legal rate."  The Quote Confirmation also provides that if PMC fails to make timely payments, it is "responsible for Wausau's costs of collection, including reasonable attorneys' fees."

4.   Feldman signed the contract on April 23, 2020.  Sar signed the contract on May 13, 2020.

```
Owner:
2301 JFK Owner, L.P.
By: PMC Property Group, Inc.,
Systems Solely As Agent for the Owner
```

The identity of the property Owner above Feldman's name differs from the identity of the Owner as stated in the introductory paragraph of the First Amendment.  There, the Owner is described as "23rd Street Lot B Owner LLC."

The First Amendment is replete with references to the Owner and Wausau.  Among other provisions, it provides "[u]nder no circumstances shall Wausau's total responsibility exceed 10% of the value of the Purchase Order between Wausau and Owner.  In no event shall Wausau be responsible for delays caused by or the result of Owner-specified materials/vendors or for indirect, consequential, exemplary, or punitive damages."  Additionally, the First Amendment contains a significant limitation: "There are no intended third party beneficiaries of the First Amendment and no provision herein shall create or give to third parties any benefit, claim, or right of action against Owner or Wausau."

The First Amendment contains language related to scheduling.  It reads, "Wausau will be responsible for any direct damage to Owner due to its inability to deliver on or near the estimated delivery dates based on the schedule dated 4/15/20 which is subject to changes approved by both Parties with reasonable adjustments in the price" (emphasis added).

A schedule dated April 15, 2020 prepared by Wausau begins with Wausau's receipt of a purchase order on April 17, 2020 and ends with the shipment of the first load of curtain wall panels during the week of November 25, 2020.  Interim dates identify deadlines for such events as approval of drawings and manufacturing.[5]  The schedule states the dates provided are "based on Wausau Window's current backlog and it is for reference purposes only. . . . Final ship dates are subject to change."  The schedule contains no subsequent shipment dates after November 25, 2020.  Feldman does not recall any approved changes or amendments to the April 15, 2020 schedule even though Wausau sent a series of later schedules to PMC.

Wausau made its first delivery of curtain wall panels on or about January 2021.  Wausau was ready to ship curtain wall panels in late 2020, as contemplated by the April 15, 2020 schedule, but PMC requested that Wausau delay its initial shipment because PMC was not prepared to accept the materials. PMC did not contract with an installer of the curtain wall

---

5.   Before shipping curtain wall panels, Wausau must design and manufacture the panels.  First, Wausau drafts drawings based on architectural drawings and other information provided by PMC. After Wausau designs these drawings, PMC must approve the designs.  It is Wausau's experience that such approval takes between three to eight weeks depending on the complexity of the project.  After PMC approves these designs, Wausau must order the necessary materials and then manufacture the curtain wall panels to these specifications.

-7-

panels until February 18, 2021, when R.A. Kennedy & Sons, Inc. was hired to do so.

In March 2021, several shipments were delayed, and PMC notified Wausau that such delays were unacceptable.  In or about April 2021, Wausau internally circulated a new schedule with a final shipment date of in or about March 2022.  On October 18, 2021, PMC objected to those dates as "totally unacceptable."  A temporary certificate of occupancy was issued to Tower II, which was largely residential, on or about January 2022.[6]  Wausau continued shipping curtain wall panels and other materials over the following year.  PMC paid invoices submitted by Wausau and Wausau communicated with PMC regarding payment status and other issues.

There is no evidence in the record of project-wide schedules kept by PMC as the real estate developer.  According to Feldman, there were no baseline schedules for the project, there was no critical path activity schedule, and there was no as-built schedule.  There were weekly meetings of carpenters, electricians, plumbers, painters, and HVAC and duct work contractors during which the participants would review site progress and work expected to be completed in the upcoming week. No minutes of such meetings were kept.

_____

6.  The record does not establish when the final certificate of occupancy was awarded.

In December 2021, Wausau circulated a new schedule with a final shipment date of August 2022.  The following month, PMC failed to pay Wausau for its January 18, 2022 invoice for $1,556,151.50.  Another invoice for $819,649.90, submitted on April 21, 2022, similarly remains unpaid.

In May 2022, Wausau circulated another revised schedule, this time identifying the project end date as on or about January 2023.  On May 20, 2022, after receipt of this revised schedule, Feldman sent a letter to Wausau on PMC letterhead on behalf of the Owner.  It notified Wausau of its default and warned of the consequences if Wausau failed to cure the default:

> The purpose of this letter is to notify Wausau in writing of its default under the Contract for failing to ship the podium perforated panels and retail curtain wall to the Project in a timely fashion.  These panels were already delayed until on or about February 24, 2022.  In a recent e-mail from Wausau, Owner was advised of a further delay until December 22, 2022 . . . .  This delay is a default under the Contract and is completely unacceptable.  As a result of this further delay, Owner will suffer additional costs and other damages. . . .  Owner is granting Wausau a cure period, expiring on May 31, 2022.

Wausau completed a site visit on June 8, 2022 and altered its scope of work to complete the design labor and production necessary within the time frame required by PMC.  However, no schedules were provided that would wrap up the

delivery schedule earlier than November 2022.  On July 21, 2022,
PMC issued a formal notice of default for Wausau's failure to
provide a satisfactory schedule before May 31, 2022.[7]

After Wausau terminated further shipments to Tower II,
Paul Beckman, Architectural Engineer at Wausau, provided formal
change orders to PMC to remove the cost of certain undelivered
materials from Wausau's scope of work.  These change orders
deducted a total of $513,651 from Wausau's project pricing under
the April 21, 2020 Quote Confirmation.

PMC has raised as a defense the failure of Wausau to
provide a waiver of liens.  The First Amendment contains an
express condition precedent concerning such waivers:

> Wausau agrees to execute conditional partial
> waivers and releases of liens and claims in
> the form set forth in Exhibit A hereto and
> to submit the same with each invoice.
> Wausau further agrees to execute an
> unconditional final waiver and release of
> liens and claims in the form set forth in
> Exhibit A hereto upon final payment.  Wausau
> agrees that execution and delivery of the
> waivers and releases set forth in this
> Paragraph 8 is an express condition
> precedent to Wausau's right to progress and
> final payment (as applicable) for
> performance of its work on the Project.

_____

7.    While both parties note the existence of the letter in
their respective Statements of Facts, neither provides a copy of
the letter.  In support of its Statement of Facts, PMC cites to
Exhibit 15 of its Declaration of Matthew H. Dempsey, which is a
collection of invoices by third party contractors to PMC.
Wausau cites to Exhibit 5 to its Declaration of John C. Ekman,
which is the May 20, 2022 letter referenced above.

-10-

While a waiver of lien is a common precondition to payment on commercial construction projects, the April 21, 2020 Quote Confirmation contains no requirements for such waivers.

On multiple occasions, Feldman requested partial lien waivers from Wausau in advance of payment.  On April 22, 2021, Feldman emailed Sar to remind him of the need for Wausau to execute lien waivers.  Wausau was requested to provide a lien waiver again on or about August 10, 2021.  At that time, Joan Stiel, Credit Analyst at Wausau, provided lien waivers for Invoice Nos. 103104, 103666, and 103992.  PMC requested a lien waiver once more on or about December 2021.  At that time, Wausau had not provided a lien waiver for the October invoice because the July invoice remained unpaid.

On one occasion on or about November 24, 2021, PMC paid Wausau prior to receipt of a lien waiver.  Aida Zoleta, the Assistant Controller of PMC, explained that although PMC did not "normally ask [Wausau] for the Lien Waiver, [] because the amount is so big, the bank ask[ed] for" one in connection with Invoice No. 104916.  PMC maintains that as of December 2021, it had paid all outstanding invoices relating to Tower II.[8]  PMC

---

8.    PMC does not otherwise respond to Wausau's argument that Invoice No. 104418 should be paid.  There is no requirement that Wausau provide lien waivers prior to payment for materials provided for Tower I.

-11-

never requested a partial lien waiver for any of the currently
outstanding Tower II invoices.

III

The threshold issue before the court is what
constitutes the contract between Wausau and PMC, the parties to
this action.

There is no dispute that the April 21, 2020 Quote
Confirmation is a contract between Wausau and PMC and that
Wausau's contract claim relies only on it.  The parties' views,
however, diverge with respect to the First Amendment.  It is
PMC's position that the First Amendment amended the Quote
Confirmation and that both documents, read together, constitute
the entire contract between the parties.  Wausau counters that
the First Amendment is not an agreement between the parties to
this lawsuit and is thus irrelevant to the present dispute.
According to Wausau, it was a separate contract not between
Wausau and PMC but between Wausau and the 2301 JFK Owner, L.P.,
the owner of Riverwalk Tower II, and was signed by PMC merely as
an agent of a disclosed principal.

It is conceded that Wausau, through authorized
representatives, signed both the Quote Confirmation and the
First Amendment.  Feldman, on behalf of PMC, signed the Quote
Confirmation.  There is no evidence in the record that PMC was
acting as an agent of the Owner or in any capacity other than on

-12-

its own behalf.  In contrast, Feldman signed the First Amendment
for PMC as the agent of the Owner.  As noted above, it was
signed:

> Owner
> 2301 JFK Owner, L.P.
> By: PMC Property Group, Inc.
> Systems Solely as Agent for the Owner

It is axiomatic that there must be mutual assent, that
is a meeting of the minds between the parties for a contract to
be formed.  Murphy v. Burke, 311 A.2d 904, 906-07 (Pa. 1973);
Restatement (Second) of Contracts § 3 (Am. L. Inst. 1981).  With
exceptions not relevant here, only a party may sue or be sued
for breach of that contract.  See Scarpitti v. Weborg, 609 A.2d
147, 149-51 (Pa. 1992).

It is well established under Pennsylvania law that
when there is a disclosed principal in a contract, the agent of
that disclosed principal cannot be held liable for breach of the
contract unless the agent expressly agrees to assume liability.
Casey v. GAF Corp., 828 A.2d 362, 369 (Pa. Super. Ct. 2003).
Here PMC, by Feldman, signed the First Amendment on behalf of
the disclosed principal "2301 JFK Owner, L.P."[9]  The First
Amendment is replete with references to the Owner and to Wausau.
Nowhere does PMC purport to assume any liability.  Thus PMC is
not a party to the First Amendment and could not be properly

---

9.   As noted earlier, the First Amendment names the owner in
its introductory paragraph as "23rd Street Lot B Owner LLC."

-13-

sued for any breach of it.  See Revere Press, Inc. v. Blumberg, 246 A.2d 407, 409 (Pa. 1968); see also Restatement (Second) of Agency §§ 320, 328 (Am. L. Inst. 1958).  Moreover, as noted above, the First Amendment specifically precludes any third party beneficiary claims.  Since PMC is not a party to the First Amendment and signed only as an agent of a disclosed principal, PMC cannot invoke it as a sword to recover damages for itself or to obtain any other relief such as a setoff.  Only Wausau and the Owner, which is not a party to this lawsuit, have any rights or obligations under the First Amendment.  See C&C Sec. Specialists, Inc. v. GTI-Superior, Inc., Civ. A. No. 86-1096, 1986 WL 7573, at *2 (E.D. Pa. July 1, 1986).

Wausau and PMC did have interactions with regard to the First Amendment during the construction project.  PMC, however, cites no evidence that it ever held itself out as a party to the First Amendment or that it ever agreed to be bound by its terms.  The undisputed evidence is that it was simply acting as the Owner's agent.  PMC, through Feldman, wrote the May 20, 2022 notice of default to Wausau not on behalf of itself but on behalf of the Owner.  The letter complained of the damages that the Owner – not PMC – was suffering as a result of Wausau's breach of the First Amendment.  The "Re:" line of the letter references the Quote Confirmation dated March 17, 2020 and makes no reference to the April 21, 2020 Quote Confirmation.

-14-

Since it was the Owner which was harmed, it is up to the Owner and not PMC as its agent to sue for breach of the First Amendment.

The default letter never mentions the April 21, 2020 Quote Confirmation.  PMC has shown the court no evidence that the Owner ever agreed to be bound by it.

The First Amendment was not an amendment to the April 21, 2020 Quote Confirmation.  These two documents are and have been treated as separate contracts.  There is only one contract between Wausau and PMC – the April 21, 2020 Quote Confirmation.  PMC's argument in this lawsuit to the contrary is an effort to fit a round peg into a square hole.

The motion of Wausau for summary judgment will be granted insofar as PMC relies on the First Amendment to support its counterclaim.  To this extent, there exists no genuine dispute of material fact and Wausau is entitled to judgment as a matter of law.  In addition, the First Amendment is not relevant or otherwise admissible as to PMC's defenses.

For the reasons stated above, it is an undisputed material fact established in this action that the only contract in issue between Wausau and PMC is the April 21, 2020 Quote Confirmation.  Accordingly, Wausau is entitled to an order to this effect under Rule 56(g).

There is simply not enough information cited to the court to go beyond this one finding of an undisputed material fact.  While certain other facts may not be disputed, their legal consequences are.  Genuine disputes of material fact remain as to whether Wausau may prevail on its claims for breach of the Quote Confirmation or for quantum meruit/unjust enrichment.  Genuine disputes of material fact also remain as to PMC's defenses and as to its counterclaim aside from any reliance on the First Amendment which is not properly a part of this action.[10]

Wausau's motion for summary judgment will be granted in part and denied in part.  PMC's motion for partial summary judgment will be denied.  An order pursuant to Rule 56(g) will be entered as to the April 21, 2020 Quote Confirmation.

---

10.  PMC, of course, is precluded from raising the issue of waiver of liens since only the First Amendment contains this requirement.

-16-